STATE EX REL. CARNEGIE DOCK & FUEL COMPANY, Respondent, vs. BECKLEY, City Clerk, Appellant.

*January 14—February 10, 1925.*

Taxation: *Occupation tax: Coal docks: Lessee handling coal at railroad dock.*

1. Where relator leased water frontage suitable for dock purposes from a railroad company, agreeing to build a coal dock and also, at a stipulated price, to unload coal from boats and store it on a dock reserved by the lessor—the coal thus passing over the lessor's reserved dock belonging to the lessor

State ex rel. Carnegie D. & F. Co. v. Beckley, 186 Wis. 80.

and having been used by it in the operation of its railroad,— sec. 70.42, Stats., relative to the assessment of a tax on coal handled over a dock, does not apply, the reserved dock being separate and distinct from relator's docks, and the statute exempting coal handled over a dock used solely in connection with an industry.    p. 83.

2. The operation of a railroad is the operation of an industry within the exemption contained in sec. 70.42, Stats.    p. 83.

3. The handling of the coal over the lessor's dock at a stipulated price per ton is not the operating of a coal dock within the meaning of sec. 70.42, Stats.    p. 84.

APPEAL from a judgment of the circuit court for Douglas county: W. R. FOLEY, Circuit Judge.    *Affirmed*.

*Certiorari* addressed to the board of review of the city of Superior to review its action in affirming an occupational tax assessed against the relator by the city assessor. On the 21st day of May, 1909, the Great Northern Railroad Company was the owner of certain water frontage in the city of Superior suitable for dock purposes.    At that time there was located on a portion of said premises a coal dock known as dock No. 5.    On that day said railroad company leased to the relator two parcels of said premises abutting on either end of said dock No. 5 for a period of thirty years. The parcels thus leased were unimproved.    The lessee obligated itself to build a modern and complete unloading and handling apparatus on parcel No. 1.    It was also agreed that the lessee should at its own expense erect upon said parcel No. 2 its office building and other structures and use said parcel No. 2 only for purposes connected with its business of handling and storing coal.

In obedience to its obligations thus assumed, the relator did build on said parcel No. 1 a new and independent coal dock, and upon parcel No. 2 its office building, and other structures necessary in connection with its business of handling and storing coal.    Coal dock No. 5 was not included in the lease and was specifically reserved to the lessor.    By the terms of the lease it was stipulated that the lessee "shall

unload from boats, store upon that part of said dock herein reserved to the lessor, and load from said reserved part of said dock into cars to be supplied by the lessor, such coal as the lessor may desire to have handled and stored upon said dock." The lessor was to pay for such work the prices specified in said lease. The title to the coal passing over said dock No. 5 was at all times in the railroad company and was used by it in the operation of its railroad.

At all times the relator had furnished to the assessor of the city of Superior, as required by sec. 70.42, Stats., a correct statement of all coal handled by it over its own coal dock, but did not furnish a statement of any coal handled over coal dock No. 5.

In 1924 the city assessor assessed an occupational tax against the relator based upon coal handled over coal dock No. 5 during the year 1923 as well as for the years 1920, 1921, and 1922. The board of review affirmed this assessment. The circuit court reversed the action of the board of review and entered judgment setting the same aside. From that judgment the city brings this appeal.

For the appellant there was a brief by *L. R. McPherson* and *C. M. Wilson,* both of Superior, and oral argument by *Mr. McPherson.*

For the respondent there was a brief by *Grace, Fridley & Crawford* of Superior, and oral argument by *C. R. Fridley.*

OWEN, J. The tax in question was assessed under the provisions of sec. 70.42, which requires "Every person, co-partnership, association, company or corporation, operating a coal dock in this state, other than a dock used solely in connection with an industry and handling no coal except that consumed by such industry, shall on or before December fifteenth of each year pay an annual occupation tax of a sum equal to one and one-half cents per ton upon all bituminous coal, and two cents per ton upon all anthracite coal handled by or over such coal dock, during the preceding year ending

State ex rel. Carnegie D. & F. Co. v. Beckley, 186 Wis. 80.

April thirtieth; and such coal shall be exempt from all taxation, either state or municipal." The statute requires every person operating such a coal dock to furnish the assessor of the municipality in which such coal dock is situated, on May 1st of each year, a full and true list or statement of all coal received in or on or handled by or over such dock during the year immediately preceding. The question is whether the relator is liable for this tax upon coal handled over dock No. 5.

The object and purpose of this occupation tax is quite apparent. It was to obtain revenue from coal, the subject of trade and commerce with but a transitory presence in the state. While great quantities of coal are stored upon our docks during the year, the 1st day of May (the date as of which all property is assessed) finds but little of such coal remaining, making it impossible for the state to reach such property for the purposes of taxation under our assessment laws. In order to subject the coal industry to a more reasonable proportion of the governmental burden, the occupation tax provided by sec. 70.42 was imposed in lieu of the usual property tax.

The statute expressly exempts a dock used solely in connection with an industry and handling no coal except that consumed by such industry. That dock No. 5 is a separate and distinct dock there can be no doubt. It is a separate and independent physical structure. But even though dock No. 5 and relator's dock constituted a single physical structure, the lease effected a legal separation thereof, so that in law they are independent docks. All of the coal going over dock No. 5 is used by the railroad company in operating its railroad. It is said that the operation of a railroad is not the operation of an industry. Perhaps the word "industry" does not aptly include a railroad in its usual significance, but within the meaning of this statute we have no hesitancy in saying that the word "industry" as here used does include a railroad. The legislature could not have intended

to exempt coal used in a manufacturing establishment, for instance, from this tax and impose it upon a railroad company. There would be no reason for such a distinction and no basis for such a classification. Keeping the object and purpose of the statute in mind, it is clear that it does not apply to coal going over dock No. 5. Neither is there any basis for the argument that the provision of the lease requiring the lessee to perform the physical labor of unloading, storing, and loading coal passing over dock No. 5 at a stipulated price per ton brings the relator within the provisions of sec. 70.42 as to said dock No. 5. This does not constitute the relator the operator of said coal dock. The judgment of the circuit court should be affirmed.

*By the Court.*—So ordered.